IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-00175-REB-CBS

DEBORAH TROUDT,
BRAD STAUF,
SUSAN CUTSFORTH,
WAYNE SELTZER,
MICHAEL HARKIN,
MIRIAM WAGNER, and
MICHAEL FOY, individually and as representatives of a class
of plan participants, on behalf of the Oracle Corporation 401(k)
Savings and Investment Plan,

    Plaintiffs,

v.

ORACLE CORPORATION,
ORACLE CORPORATION 401(K) COMMITTEE, and
JOHN DOES 1-20.

    Defendants.

---

**RECOMMENDATION REGARDING DEFENDANTS'
SUPERSEDING MOTION TO DISMISS THE COMPLAINT**

---

Magistrate Judge Shaffer

  THIS MATTER comes before the court on Defendants Oracle Corporation and the

Oracle Corporation 401(k) Committee's Superseding Motion to Dismiss the Complaint (doc.

#36), Plaintiffs' Response to Defendants' Superseding Motion to Dismiss (doc. #49), and

Defendants' Reply in Support of Superseding Motion to Dismiss (doc. #51). In addition, each

side submitted a Notice of Supplemental Authorities (doc. ## 55 and 56). The pending motion

was referred to this magistrate judge by Judge Robert E. Blackburn for a Report and

1

Recommendation.  I have reviewed the briefs submitted by each side and personally read every case cited by the parties.  The court also did its own legal research to supplement the cases referenced in the parties' briefs.  For the following reasons, I recommend that Defendants' Superseding Motion be denied.

## BACKGROUND

This putative class action commenced on January 22, 2016 with the filing of the Complaint asserting claims against Oracle Corporation, the Oracle Corporation 401(k) Committee and John Does 1-20.  The named Plaintiffs are participants in the Oracle Corporation 401(k) Savings and Investment Plan (the "Plan"), which is an "employee pension benefit plan" under 29 U.S.C. § 1002(2)(A) of the Employee Retirement Income Security Act of 1974 (ERISA).  The Plan, as of December, 2014, purportedly held more than $12 billion in assets and had 65,732 participants.  *See* Complaint, at ¶ 11.  Oracle Corporation is the named fiduciary of the Plan under 29 U.S.C. § 1102(a) and the Plan administrator under 29 U.S.C. § 1002(16)(A).  *Id.* at ¶ 12.  The Oracle Corporation 401(k) Committee is a named fiduciary under 29 U.S.C. § 1102(a), charged with "(1) the interpretation of the Plan; (2) the formulation of rules necessary to administer the Plan; (3) the final determination of participant claims; and (4) the establishment and implementation of a funding policy and method for the Plan."  *Id.* at ¶ 13.  During the relevant time period, Fidelity Management Trust Company was the Plan trustee appointed by Oracle and responsible for providing record keeping and administrative services to the Plan pursuant to the 2004 Trust Agreement.[1]  *Id.* at ¶¶ 18 and 19.

---

[1]For convenience, the Complaint refers to all Fidelity entities, along with their affiliates, subsidiaries, parents and otherwise, as "Fidelity."  This Recommendation employs that same convention.

As the parties are familiar with the facts at issue in this case, only a brief summary of the salient allegations is necessary to place the pending motion in context.  Plaintiffs's first claim for relief alleges that Defendants breached their duty of loyalty and prudence by causing the Plan to pay excessive recordkeeping fees to Fidelity.  In support of their first claim for relief, Plaintiffs allege that Fidelity has been the record-keeper for the Plan since 1993 and throughout that period of time, Defendants have not put the Plan's services out for competitive bids from outside vendors who charge on a flat per-participant fee basis.  *See* Complaint, at ¶¶ 51 and 83.  According to the Complaint, "[t]he primary method of payment to Fidelity for its recordkeeping services for the Plan has been an asset based fee and not a flat, per-participant fee."  *Id.* at ¶ 50.  Plaintiffs contend that this uncapped, asset-based revenue sharing arrangement permitted Fidelity to receive increased payments as the assets in the Plan grew, even though the services that Fidelity provided remained the same.  By failing "to prudently monitor and control Fidelity's total record keeping compensation, particularly asset-based, uncapped revenue sharing," Defendants alleged caused "losses to the Plan exceeding $40 million."  *Id.* at ¶ 63.

Plaintiffs' second claim for relief alleges Defendants "failed to engage in a prudent process for the selection and retention of Plan investment options," and instead "provided and retained more expensive funds with inferior historical performance that paid revenue sharing and generated investment management fee revenues for Fidelity."  *Id.* at ¶ 89.  The Complaint specifically cites the "consistent underperformance of the Artisan Small Cap Value Fund" (*id.* at ¶¶ 66-68), the "dramatic underperformance" of the Pimco Inflation Response Multi-Asset Fund (*id.* at ¶¶ 69-70), and the "imprudent addition" of the "underperforming" TCM Small-Mid Cap Growth Fund (*id.* at ¶¶ 70-71).  In essence, the second claim contends that Defendants' breach of

the duties of loyalty and prudence by selecting and retaining these funds "caus[ed] the Plan to lose tens of millions of dollars of participants' retirement savings." *Id.* at ¶ 89.

The third and fourth claims for relief essentially mirror claims one and two.  The third claim asserts that Oracle Corporation breached its duty to monitor the activities of other fiduciaries, specifically the 401(k) Committee.  The fourth claim alleges that Defendants violated 29 U.S.C. § 1106(a)(1)(A) by "causing the Plan to engage Fidelity to be the recordkeeper for unreasonable compensation" and causing "the Plan to engage in a transaction that they knew or should have known constituted a direct or indirect furnishing of services between the Plan and a party in interest." *Id.* at ¶ 100.

In essence, "Plaintiffs allege that Defendants breached their [fiduciary] duty in two primary respects: (1) causing the Plan to pay unreasonable administrative expenses; and (2) providing three investment options that consistently underperformed and did not justify their selection or retention in the Plan."  *See* Plaintiffs' Response to Defendants' Superseding Motion, at p. 9.

In moving to dismiss, Defendants insist that Plaintiffs' first claim for excessive fees and revenue-sharing fails because revenue-sharing is "perfectly legal" and because "nothing in ERISA requires fiduciaries to solicit bids [for record keeping services]" through a competitive process.  Defendants further contend that the first claim rests on nothing more than implausible conclusory allegations.  Defendants argue that the second claim in Plaintiffs' Complaint is "predicated entirely, and impermissibly, on hindsight."  Defendants assert that "plaintiffs do not allege Defendants selected [the allegedly underperforming funds] for impermissible reasons" and that the second claim "is devoid of any supporting factual allegations sufficient to raise a

plausible inference of misconduct." Defendants contend that claim three fails because claims

one and two fail to assert cognizable claims under Rule 12(b)(6). Similarly, Defendants argue

that claim four must be dismissed because Plaintiffs "have not plausibly alleged Fidelity was

overpaid for recordkeeping or trustee services" and because "a mutual fund is not a party in

interest." Defendants further argue that claim four subsumes transactions that are time-barred.

Needless to say, Plaintiffs take exception to all of the foregoing arguments.

## ANALYSIS

The parties are familiar with the prevailing standard of review under Rule 12(b)(6) of the

Federal Rules of Civil Procedure. Rule 12(b)(6) states that a court may dismiss a complaint for

"failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In

deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual

allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova*

*v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d

1090, 1098 (10th Cir. 2009)). The court's analysis is two-fold.

> First, the court identifies "the allegations in the complaint that are not entitled to
> the assumption of truth," that is those allegations that are legal conclusions, bare
> assertions, or merely conclusory. Second, the court considers the factual
> allegations "to determine if they plausibly suggest an entitlement to relief."

*Wood v. Wells Fargo Bank, N.A.*, No. 13-cv-01731-CMA-KMT, 2013 WL 5763101, at *2 (D.

Colo. Oct. 23, 2013) (internal citations omitted).

"The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as

true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247

(10th Cir. 2008). However, "[t]he issue in resolving a motion to dismiss . . . is 'not whether [the]

plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support

5

the claims." *In re YRC Worldwide, Inc. ERISA Litigation*, No. 09-2593- JWL, 2010 WL

4386903, at *1 (D. Kan. Oct. 29, 2010) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511

(2002)).

Normally, in deciding a motion to dismiss under Rule 12(b)(6), a court should consider

only the contents of the complaint. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). If

the court considers materials attached to a defendant's motion to dismiss, the court should

convert the motion into one for summary judgment and afford the parties notice and an

opportunity to present relevant evidence. However the court has "broad discretion in

determining whether or not to accept materials beyond the pleadings," *Lowe v. Town of

Fairland, Okla.*, 143 F.3d 1378, 1381 (10th Cir. 1998), and that discretion extends to "deciding

whether to convert a motion to dismiss into a motion for summary judgment" by accepting or

rejecting documents proffered by

the parties in the context of briefing a Rule 12(b)(1) motion. *Osei v. Brooks*, No. 11-cv-01135-

PAB-KMT, 2012 WL 1079465, at *2 (D. Colo. Mar. 5, 2012) (quoting *JP Morgan Trust Co.

Nat. Ass'n v. Mid-America Pipeline Co.*, 413 F. Supp. 2d 1244, 1256-57 (D. Kan. 2006)).

Exceptions to this general rule include documents incorporated by reference in the

complaint; documents referred to in and central to the complaint, when no party disputes their

authenticity; and "matters of which a court may take judicial notice." *See Gee*, 627 F.3d at 1186

(quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Here,

Defendants have attached several exhibits to their Superseding Motion to Dismiss.

In particular, Defendants have proffered a copy of the Oracle Corporation 401(k) Savings

and Investment Plan, which is referenced in paragraphs 1, 7, 8, and 13 of the Complaint, and the

Trust Agreement with Fidelity Management Trust Company, which is referenced in paragraphs 17 and 18 of the Complaint. *Cf. Walden v. Metropolitan Life Insurance Company of America, Inc.*, 75 F. Supp. 3d 1320, 1323 n. 2 (D. Colo. 2014) (the court elected to consider Honeywell International Inc.'s Disability Income Insurance: Long Term Benefits Corporate Plan in analyzing defendant's motion to dismiss as "the Plan provides the basis for Plaintiff's claims and is referred to in the Complaint"); *In re Sprint Corp. ERISA Litigation*, 388 F. Supp. 2d 1207, 1217 (D. Kan. 2004) (the court determined that it would consider the ERISA Plan documents and the related Trust Agreement attached to defendants' motion to dismiss because those documents were referenced in plaintiffs' complaint and plaintiffs did not dispute their authenticity). For purposes of this Report and Recommendation, the court can, and will, consider Defendants' Exhibits A, C, H, J, and K as they are documents referred to in the Complaint and central to the Plaintiffs' claims. *Cf. Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002), *cert. denied,* 537 U.S. 1066 (2002).

Defendants have also marked as Exhibit B, a copy of a Form 5500 for the Oracle Corporation 401(k) Savings and Investment Plan for the year 2014. The Form 5500 series is utilized by employee benefit plans to satisfy annual reporting requirements under ERISA. Because Defendants' Exhibit B is a publically-available document and a required government filing, I can take judicial notice of that document without converting the pending motion into a motion for summary judgment. *Cf. Palmason v. Weyerhaeuser Co.*, No. C 11-0695RSL, 2013 WL 1788002, at *1 (W.D. Wash. Apr. 26, 2013) (taking judicial notice of Weyerhaeuser's 2010 Form 10K, the February 2009 United States Department of Labor Private Pension Bulletin Historical Tables and Graphs, and Weyerhaeuser's 2007 Form 5500, because those documents

had been filed with government agencies, plaintiffs had not challenged their authenticity, and the existence and contents of the documents could be ascertained by resort to public records). However, as the Tenth Circuit noted in *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006), *cert. denied*, 549 U.S. 1209 (2207), documents judicially noticed can only be considered to show their contents, not to prove the matters asserted therein.

The court will not take judicial notice of or consider for purposes of this Recommendation Defendants Exhibits D, E and F, each of which is a prospectus for one or more investment funds for the years 2010 or 2011.  Also, I will not consider Defendants' Exhibit G, which appears to be an unauthenticated single-page document entitled "2014 Mutual Fund Revenue Sharing Annual Allocation for the Oracle Corporation 401(k) Savings & Investment Plan."  Finally, I decline to consider Defendants' Exhibit I, which is a single-page Declaration from Don Reich who apparently is employed as the 401(k) & Deferred Compensation Plan Manager at Oracle Corporation.

"While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [the] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) Therefore, I have started my analysis by considering the Defendants' duties of loyalty and prudence.

To properly assert an ERISA claim for breach of fiduciary duty under 29 U.S.C. § 1104(a)(1), a plaintiff must allege facts that plausibly demonstrate that:  (1) the defendant was a plan fiduciary, (2) the defendant breached its fiduciary duty, and (3) that the breach resulted in harm to the plaintiff.  *See, e.g., Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 639 (7th Cir. 2007),

*cert. denied*, 555 U.S. 816 (2008); *Allen v. Greatbanc Trust Co.*, No. 15 C 3053, 2015 WL 5821772, at *2 (N.D. Ill. Oct. 1, 2015), *reversed and remanded on other grounds*, 835 F.3d 670 (7th Cir. 2016); *Trustees of Local 138 Pension Trust Fund v. Logan Circle Partners, L.P.*, No. 10 Civ. 5758, 2012 WL 1902266, at *3 (E.D.N.Y. May 25, 2012). *See also* 29 U.S.C. § 1109 ("Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations or duties imposed upon by fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach.").

A fiduciary of a pension plan governed by ERISA is required to act prudently in managing the plan's assets. *Fifth Third Bancorp v. Dudenhoeffer*, __U.S. __, 134 S.Ct. 2459, 2463 (2014). A fiduciary is expected to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries." *See* 29 U.S.C. § 1104(a)(1)(A)(I). A "prudent" fiduciary in discharging his or her duties, also must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims," *see* 29 U.S.C. § 1104(a)(1)(B), and "in accordance with the documents and instruments governing the plan" insofar as those directives are consistent with ERISA's other statutory requirements. *See* 29 U.S.C. § 1104(a)(1)(D).

As the Supreme Court acknowledged in *Tibble v. Edison International*, __ U.S. __, 135 S.Ct. 1823, 1829 (2015), an ERISA fiduciary's duty of prudence imposes a continuing obligation to monitor investments and remove imprudent ones. Stated differently,

> a fiduciary's compliance with the prudent-man standard requires that the fiduciary give "appropriate consideration" to whether an investment "is reasonably

designed, as part of the portfolio . . . to further the purposes of the plan, taking into consideration the risk of loss and the opportunity for gain (or other return) associated with the investment." Accordingly, the prudence of each investment is not assessed in isolation but, rather, as the investment relates to the portfolio as a whole.

*Pension Benefit Guaranty Corp. ex rel. Saint Vincent Catholic Medical Centers Retirement Plan v. Morgan Stanley Investment Management, Inc.*, 712 F.3d 705, 716-17 (2d Cir. 2013) (internal citations omitted).

"ERISA's fiduciary standards of conduct are 'the highest known to the law.'" *Osberg v. Foot Locker, Inc.*, 138 F. Supp. 3d 517, 551 (S.D.N.Y. 2015). "The duty of loyalty requires that a fiduciary 'discharge his duties with respect to a plan solely in the interests of the participants and beneficiaries.'" *In re Northrop Grumman Corp. ERISA Litigation*, No. CV 06-06213 MMM (JCx), 2015 WL 10433713, at *28 (C.D. Cal. Nov. 24, 2015). "[P]erhaps the most fundamental duty of a trustee is that he must display throughout the administration of the trust complete loyalty to the interests of the beneficiaries and must exclude all selfish interest and all consideration of the interests of third persons." *Id.* at *26 (quoting G. Bogert, G. Bogert & A. Hess, THE LAW OF TRUSTS AND TRUSTEES § 543 (3d ed. 2015)). "A trustee who simply ignores changed circumstances that have increased the risk of loss to the trust's beneficiaries is imprudent." *Armstrong v. LaSalle Bank National Ass'n*, 446 F.3d 728, 734 (7th Cir. 2006). Similarly, the Supreme Court held in *Tibble*, 135 S.Ct. at 1829, that in an ERISA case, "[a] plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones."

However, a plan fiduciary's actions should "not be judged 'from the vantage point of hindsight.'" *Chao v. Merino*, 452 F.3d 174, 182 (2d Cir. 2006) (quoting *Katsaros v. Cody*, 744

F.2d 270, 279 (2d Cir. 1084). *Cf. Pension Benefit*, 712 F.3d at 716 (noting that the "prudent

person" standard "focus[es] on a fiduciary's conduct in arriving at an investment decision, not on

its results, and ask[s] whether a fiduciary employed the appropriate methods to investigate and

determine the merits of a particular investment") (quoting *In re Unisys Sav. Plan Litig.*, 74 F.3d

420, 434 (3rd Cir. 1996). "[S]o long as the 'prudent person' standard is met, ERISA does not

impose a 'duty to take any particular course of action if another approach seems preferable."

*Chao*, 452 F.3d at 182. "A court should not find that a fiduciary acted imprudently in violation

of ERISA ¶ 404(a)(1)(B) merely because, with the benefit of hindsight, a different decision

might have turned out better." *Osberg*, 138 F. Supp. 3d at 552. In *Leber v. CitiGroup 401(k)*

*Plan Investment Committee*, 129 F. Supp. 3d 4, 14 (S.D.N.Y. 2015), the court recognized that

Section 404 of ERISA "focuses on a fiduciary's conduct in arriving at an investment decision,

not on its results, and asks whether a fiduciary employed the appropriate methods to investigate

and determine the merits of a particular investment."

> So long as "the complaint 'alleges facts that, if proved, would show that an
> adequate investigation would have revealed to a reasonable fiduciary that the
> investment at issue was improvident,'" the claim will survive a motion to dismiss,
> "even absent any well-pleaded factual allegations relating directly to the methods
> employed by the ERISA fiduciary." "Because the content of the duty of prudence
> turns on the circumstances . . . prevailing at the time the fiduciary acts, . . . the
> appropriate inquiry will necessarily be context specific."

*Id.* at 14 (internal citations omitted).

In sum, the case law recognizes that "[w]hen evaluating whether a fiduciary has fulfilled

its role or not, a court must look to the totality of the circumstances[.]" *See, e.g., In re General*

*Growth Properties, Inc. ERISA Litigation*, No. 08 CV 6680, 2010 WL 1840245 at *6 (N. D. Ill.

May 6, 2010). Similarly, "'the essential question,' in determining the reasonableness of a fee 'is

whether the charges are reasonable in relation to what the plan receives.'" *Perez v. Chimes District of Columbia, Inc.*, No. RDB-15-3315, 2016 WL 4993293, at *8 (D. Md. Sept. 19, 2016). I am not convinced that this highly contextual analysis is best applied in a Rule 12(b)(6) analysis.       My review of the prevailing case law has been enlightening in another respect. The parties in this action are represented by law firms that have been on opposite sides in other similar ERISA litigation.  Given that history, each law firm, not surprisingly, places particular emphasis on its own past successes and takes great pains to distinguish the facts and holdings in those cases where the opposing firm prevailed.  Tenth Circuit case law, however, does not figure prominently in either party's arguments and my own research has not found any controlling Tenth Circuit ERISA precedents on point.  At best, each side is relying on non-binding authority that it believes, from its own particular perspective, is enlightening.

In considering the arguments advanced by the parties, I have carefully considered the "Facts Applicable to All Counts," which consists of paragraphs 44 through 75, found at pages 12 through 26 of the Complaint.  Many of those numbered paragraphs could be described as generic allegations that might be found any ERISA pleading.[2]  Other paragraphs present legal arguments

---

[2]For example, Plaintiffs allege that "[i]n a defined-contribution plan, participants' retirement benefits are limited to the value of their own individual accounts, which is determined solely by employee and employer contributions plus the amount gained through investment in the options that plan fiduciaries provide, less expenses.  See 29 U.S.C. §1002(34); *Tibble v. Edison Int'l*, 135 S.Ct. 1823, 1826 (2015).  Poor investment performance and excessive fees can significantly impair the value of a participant's retirement account.  Over time, even seemingly small differences in fees and performance can result in vast differences in the amount of savings available at retirement.  *See, e.g.*, U.S. Dep't of Labor, *A Look at 401(k) Plan Fees* 1–2 (Aug. 2013) (1% difference in fees over 35 years reduces a participant's account balance at retirement by 28%)."  *See* Complaint, at ¶ 44.

Case 1:16-cv-00175-REB-CBS   Document 63   Filed 02/16/17   USDC Colorado   Page 13 of 15

or mere conclusory statements.[3]  Depending on one's particular perspective, I suppose, many of

Plaintiffs allegations might be considered "conclusory" or "legal conclusions masquerading as

facts."  So, for example, the Complaint summarily alleges that "Defendants failed without good

cause to put the Plan's record keeping compensation out for competitive bidding on a prudently

regular basis. Defendants also failed to prudently monitor and control Fidelity's total record

keeping compensation, particularly asset-based, uncapped revenue sharing."  *See* Complaint, at ¶

63.  Other paragraphs in the Complaint make similar sweeping statements.

As a general matter, "conclusory allegations without supporting averments are

insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106,

1110 (10th Cir. 1991).  Moreover, "[l]egal conclusions couched as factual allegations do not offer

well-pled facts."  *Heartland Barge Management, LLC v. Dixie Pellets, LLC*, No. 09-00585-KD-

B, 2010 WL 703183, at *4 (S.D. Ala. Feb. 22, 2010).  But the Tenth Circuit has acknowledged

that "the plausibility standard has been criticized by some as placing an improper burden on

plaintiffs," particularly where "there is asymmetry of information."[4]  *Gee*, 627 F.3d at 1185.

Such an asymmetry may exist in this case.  I also note the Supreme Court's decision in *Erickson*

---

[3]*See, e.g.*, Complaint, at ¶ 47 ("401(k) plan fiduciaries are required to individually analyze for prudence each investment option made available to participants. *DiFelice*, 497 F.3d at 423–24. Defendants failed to engage in a prudent and loyal fiduciary process to select and maintain only prudent and reasonably priced investments as Plan investment options.").

[4]On this point, I note the arguments advanced by Professor Arthur Miller in a law review article he authored in 2013, entitled *Simplified Pleading, Meaningful Days in Court, and Trials on the Merits: Reflections on the Deformation of Federal Procedure,* 88 N.Y.U L. Rev.  286 (2013).  In this article, Professor Miller expresses the view that "the fact versus conclusion dichotomy" is a "dubious basis for testing a pleading."  *Id.* at 337 n. 194.  Professor Miller suggests that motions to dismiss properly should be viewed as a procedure that only determines the legal sufficiency of the statements in the complaint; the salient question should be "does the complaint state a claim the law recognizes?"  *Id.* at 337.

13

*v. Pardus*, 551 U.S. 89, 93 (2007), decided very shortly after *Bell Atlantic Corp. v. Twombly*, 550 U.S. 5344 (2007), which re-affirmed that under Rule 8(a)(2), "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  In *Khalik*, 671 F.3d at 1191, the Tenth Circuit described the *Twombly/Iqbal* standard as "a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do." The Tenth Circuit in *Khalik* went on to say, however, that "Rule 8(a)(2) still lives."  *Id.*

In conclusion, I offer no opinions regarding ultimate merits of Plaintiffs' claims and I do not discount any of the arguments or authorities advance in Defendants' briefing.  Although Defendants raise some significant questions regarding the merits of Plaintiffs' claims, I am guided by the Tenth Circuit's admonition in *Tal*, 453 F.3d at 1266, that "Rule 12(b)(6) motions to dismiss are not designed to weigh evidence or consider the truth or falsity of an adequately pled complaint."  This court also takes to heart Judge Blackburn's comments in *Kennedy v. Finley*, No. 11-cv-00967-REB-KMT, 2012 WL 2564796 (D. Colo. Jul. 2, 2012), *reversed in part on other grounds*, 552 Fed. Appx. 787 (10th Cir. 2014), where he wrote

> The nature and specificity of the allegations required to state a plausible claim will vary based on context and will "require[ ] the reviewing court to draw on its judicial experience and common sense."  Nevertheless, the [Rule 12(b)(6)] standard remains a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."

The Complaint in this case presents allegations that challenge actions and omissions on the part of the Defendant fiduciaries of the Oracle Corporation 401(k) Savings and Investment Plan.  For purposes of the pending motion, I must construe those allegations in a light most

14

favorable to Plaintiffs.  While I am not discounting the possibility that Defendants may

ultimately prevail on the merits, for purposes of the pending motion, I believe Plaintiffs have met

their pleading obligations.

For the foregoing reasons, I conclude that the legal and factual merits of Plaintiffs'

claims are better resolved on a fuller factual record, either in the context of a motion for

summary judgment or at trial.  Accordingly, I am recommending that Defendants' Superseding

Motion to Dismiss be denied.

DATED this 16th day of February, 2017.

BY THE COURT:

s/ Craig B. Shaffer
United States Magistrate Judge