# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Robert E. Blackburn

Civil Action No. 16-cv-00175-REB-CBS

DEBORAH TROUDT, et al.,

    Plaintiffs,

v.

ORACLE CORPORATION, et al.,

    Defendants.

## ORDER RE: PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**Blackburn, J.**

The matter before me is **Plaintiffs' Motion for Class Certification** [#104],[1] filed June 30, 2017. I grant the motion on the terms set forth herein.

### I. JURISDICTION

I have jurisdiction over this matter under 28 U.S.C. §1331(federal question) and 29 U.S.C. § 1132(e)(1) (ERISA).

### II. STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 23, a class may be certified if the following requirements are met: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the class, and; (4) the representative parties will protect the interests of the class adequately. In addition, one

---

[1] "[#104]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

of the three alternative requirements outlined in Rule 23(b) also must be satisfied. ***Sibley v. Sprint Nextel Corp.***, 254 F.R.D. 662, 670 (D. Kan. 2008).

The question whether to certify a class certification is committed to the sound discretion of the trial court. ***Anderson v. City of Albuquerque***, 690 F.2d 796, 799 (10th Cir. 1982). As the proponent of class certification, plaintiffs bear a "strict burden of proof" to demonstrate the requirements of Rule 23 are satisfied. ***Trevizo v. Adams***, 455 F.3d 1155, 1162 (10th Cir. 2006). Nevertheless, because a certified class may be altered, expanded, subdivided, or abandoned as the case develops, ***Daigle v. Shell Oil Co.***, 133 F.R.D. 600 (D. Colo. 1990), doubts as to the propriety of entertaining a class action should be resolved in favor of certification, *see **Esplin v. Hirschi***, 402 F.2d 94, 99 (10th Cir. 1968) ("[I]f there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require.").

## III.  ANALYSIS

This lawsuit concerns the Oracle 401(k) Savings and Investment Plan ("the Plan"), a defined contribution retirement benefits plan sponsored and maintained by defendant Oracle Corporation ("Oracle") for the benefit of its employees. Oracle is the named fiduciary and administrator of the Plan. The Plan currently has more than 70,000 participants and manages over $12 billion in assets.

Pursuant to the terms of a Trust Agreement, Oracle delegated to the Oracle Corporation 401(k) Committee ("the Committee"), *inter alia*, its fiduciary responsibility for

2

determining investment options for the Plan.[2]  It also delegated its duties to serve as recordkeeper and trustee for the Plan to Fidelity Management Trust Company ("Fidelity").  In return for these services, Oracle agreed to pay Fidelity reasonable administrative expenses.

By this lawsuit, named plaintiffs seek to represent a class consisting of

> All participants and beneficiaries of the Oracle Corporation 401(k) Savings and Investment Plan from January 1, 2009 through the date of judgment, excluding the Defendants.

This putative class asserts four claims based on two primary allegations:  (1) that defendants allowed Fidelity to collect excessive and unreasonable recordkeeping and administrative fees from the Plan; and (2) that defendants caused the Plan to make certain imprudent investments.  Defendants do not oppose class certification *per se*, but argue plaintiffs' proposed class definition does not meet the requirements of Rule 23.

I begin by examining that definition.  "Although not mentioned specifically in Rule 23 itself, a prerequisite to class certification is an appropriate class definition."  ***Maez v. Springs Automotive Group, LLC***, 268 F.R.D. 391, 394 (D. Colo. 2010).  The adequacy of the class definition must be determined before the court addresses the other requirements of Rule 23.  ***Warnick v. Dish Network, LLC***, 301 F.R.D. 551, 556 (D. Colo. 2014), ***appeal dismissed*** (October 7, 2015).  This latent aspect of the class certification inquiry – the question of "ascertainability" – "ensures that a proposed class will actually function as a class" by ensuring "that class members *can* be identified."  ***Byrd v. Aaron's Inc.***, 784 F.3d 154, 162 (3rd Cir. 2015) (emphasis in original).

---

[2]  The individual defendants are all members of the Committee.

3

A class is sufficiently defined when potential class members can be identified by reference to objective criteria. ***Rhodes v. Olson Associates, P.C.***, 83 F.Supp.3d 1096, 1111-12 (D. Colo. 2015). "[T]he description of the class must be sufficiently definite so that it is administratively feasible for the court to ascertain whether a particular individual is a member." ***Joseph v. General Motors Corp.***, 109 F.R.D. 635, 639 (D. Colo. 1986). "[T]he district court has broad discretion to determine whether the class description is sufficiently definite." 5 James W. Moore et al., **MOORE'S FEDERAL PRACTICE** § 23.21[5] at 23-61 (3rd ed. 1999).

That prerequisite is ostensibly met in this case. "ERISA [fiduciary] litigation ... presents a paradigmatic example of a [Rule 23](b)(1) class." ***In re Global Crossing Securities & ERISA Litigation***, 225 F.R.D. 436, 453 (S.D.N.Y. 2004) (internal quotation marks omitted). Indeed, defendants do not suggest this class is unascertainable. Rather, they claim plaintiff's definition is both (1) overly broad generally in terms of its proposed time frame; and (2) with respect to the imprudent investment claims particularly, insufficiently specific in terms of which Plan participants and beneficiaries may be part of that class. The later argument will be addressed more fully in the context of considering the requirements of Rule 23(a).

As for the former, defendants suggest the proposed class must be limited by the applicable six-year statute of repose which applies to ERISA claims. ***See*** 29 U.S.C. § 1113(1). ***Fulghum v. Embarq Corp.***, 785 F.3d 395, 415 (10th Cir.), ***cert. denied***, 136 S.Ct. 537 (2015). However, I concur with plaintiffs that such a determination is premature. The Amended Complaint alleges defendants concealed the various breaches of their fiduciary duties on which plaintiffs' claims are based (***see* Am. Compl.**

4

¶ 59 at 18 & ¶¶ 72-75 at 25-26 [#84], filed May 26, 2017), which circumstance, if proven, would toll limitations, *see* 29 U.S.C. § 1113.  It would be inappropriate at this early juncture to attempt to discern the merits of those allegations.  *See **Kanawi v. Bechtel Corp.***, 254 F.R.D. 102, 112 (N.D. Cal. 2008); ***Taylor v. United Technologies Corp.***, 2008 WL 2333120 at *6 (D. Conn. June 3, 2008).

For the present, therefore, I will certify a class defined by the time frame suggested by plaintiffs, subject to later modification if discovery fails to bear out the truth of plaintiffs' allegations of concealment.  *See* FED. R. CIV. P. 23(c)(1)(C); ***In re Integra Realty Resources, Inc.***, 354 F.3d 1246, 1261 (10th Cir. 2004) ("[A] trial court overseeing a class action retains the ability to monitor the appropriateness of class certification throughout the proceedings and to modify or decertify a class at any time before final judgment.").

Having so concluded, I now turn to the explicit requirements of Rule 23.  As noted above, defendants do not oppose certification of this action as a class action, but only challenge the manner in which plaintiffs purport to define the class as regards the imprudent investment claims.  Examining the requirements of Rule 23, I agree with defendants that certification of more tightly defined subclasses as to those claims is appropriate here, as discussed in more depth below.

There is no question here but that the proposed class, however defined or subdivided, satisfies the requirement of numerosity.  FED. R. CIV. P. 23(a)(1) (proposed class must be so numerous that joinder of all members of the class is impracticable).  As of December 31, 2014, the Plan had more than 65,000 participants; it now has more

5

than 70,000.  Regardless whether the class is defined as a single entity, as plaintiffs suggest, or as several subclasses, as defendants would have it, the class is sufficiently numerous to satisfy Rule 23(a)(1).[3]

Moreover, with respect to the excessive administrative fees claim, defendants do not argue that the proposed class fails to meet the other requirements of Rule 23(a).  As to this claim, there plainly exist "common questions of law or fact" the resolution of which will affect all or a significant number of the members of the proposed class.  **FED. R. CIV. P.** 23(a)(2).  *See also Maez v. Springs Automotive Group, LLC*, 268 F.R.D. 391, 395 (D. Colo. 2010).  In addition, the claims of the proposed class representatives are typical of – indeed, identical to – the claims of the class.  **FED. R. CIV. P.** 23(a)(3); *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988); *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982), *cert. denied*, 103 S.Ct. 1524 (1983).  It thus appears clear that "the named plaintiff[s'] claim and the class claims are [sufficiently] interrelated" so "that maintenance of a class action is economical" with respect to the administrative fees claim.  *General Telephone Company of Southwest v. Falcon*, 457 U.S. 147, 157 n.13, 102 S.Ct. 2364, 2370 n.13, 72 L.Ed.2d 740 (1982).  The interrelated requirements of commonality and typicality therefore are satisfied with respect to the administrative fees claim.

For similar reasons, the final requirement of Rule 23(a) – adequacy – likewise is easily met with respect to this claim.  **FED. R. CIV. P.** 23(a)(4).  This requirement is

---

[3] All these participants are implicated by the putative administrative fees claim.  Although only some subset are implicated by the imprudent investment claims, defendants do not suggest these subclasses – for which they advocate – are insufficiently numerous to satisfy Rule 23(a)(1).

intended to ensure the class representative has sufficient interests in common with the class that she adequately will assert and protect the interests of the class. *Maez*, 268 F.R.D. at 396-97. There is a presumption in favor of a finding of adequacy, *see id.* at 39, and which defendants have presented neither argument nor evidence to attempt to overcome. I therefore find the named representatives are adequate and will be able to control the litigation and to protect the interests of the class as a whole insofar as the excessive fees claim in concerned. Moreover, as discussed further below, I conclude also that counsel for the named plaintiffs has demonstrated ample competence to represent the named plaintiffs and the class in this case.

The analysis is rather more complicated in considering plaintiffs' imprudent investment claims, however. Plaintiffs advocate for their proposed omnibus class definition on the basis that common contentions of fact and principles of law inform all their claims, namely: whether each defendant breached its fiduciary duty or engaged in a prohibited transaction as alleged; whether the Plan suffered losses and the amount thereof; and what kind of equitable relief may be appropriate. Defendants insist, however, that the requirements of at least typicality and adequacy are not met with respect to the definition of the imprudent investment class because not all participants nor all named putative class representatives were invested in those funds.

This argument draws from the Seventh Circuit's decision in *Spano v. Boeing Co.*, 633 F.3d 574 (7th Cir. 2011).[4] The court began by noting the distinction between a defined benefit plan and a defined contribution plan: "The former plans assure

---

[4] *Spano* in fact consolidated two appeals, the second being *Beesley v. Inernational Paper Co.*

7

participants whose rights had [*sic*] vested that they will receive a specified payout upon retirement, while the latter plans make no such promise." ***Spano***, 633 F.3d at 578. The court continued:

> For many years, most retirement plans took the form of a defined-benefit plan, and this fact is reflected in the earlier Supreme Court decisions in this area. In ***Massachusetts Mutual Life Insurance Co. v. Russell***, 473 U.S. 134, 148, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), the Court held that a fiduciary to a defined-benefit plan could not be held personally liable to a plan participant or beneficiary for damages that resulted from improper or untimely processing of benefit claims. . . . Instead, the Court held, "[T]he entire text of § 409 persuades us that Congress did not intend that section to authorize any relief except for the plan itself." . . . The key fiduciary duties that the statute addressed, [the Court] added, "relate to the proper management, administration, and investment of fund assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest."
>
> These rules apply in a straightforward way to defined-benefit plans. Employers typically hold a pool of assets in trust for the plan, and that plan is administered by trustees who are fiduciaries with respect to those assets. ***Russell*** held that section 502(a)(2) applies only if there is a plan-wide breach, although the Court had no need to consider what might amount to injury to the plan outside the context of defined-benefit plans. Restoring funds to the plan, for a defined-benefit plan, assures that the plan will have enough funds to remain actuarially sound. Each participant is affected in the same way by anything that diminishes the fund's assets.

*Id.* at 578-79 (internal citations omitted).

The Court later considered these principles in the context of claims against a defined-contribution plan in ***LaRue v. DeWolff, Boberg & Associates, Inc***., 552 U.S. 248, 128 S.Ct. 1020, 169 L.Ed.2d 847 (2008). ***See Spano***, 633 F.3d at 579. The

8

plaintiff in *LaRue* alleged his 401(k) plan's fiduciaries had breached their duties to him in failing to carry out his instructions to make certain changes to the investments in his account, depleting his interest in the plan by some $150,000. *LaRue*, 128 S.Ct. at 1022-23. The lower courts found the plaintiff's claims to be personal to him, rather than stating injury to the plan as a whole, and therefore found them barred under the aegis of *Russell*. The Supreme Court disagreed. As summarized in *Spano*,

> [t]he Supreme Court. . . made the critical statement that "the legal issue under § 502(a)(2) is the same whether [LaRue's] account includes 1% or 99% of the total assets in the plan." That part of ERISA, it noted, "authorizes the Secretary of Labor as well as plan participants, beneficiaries, and fiduciaries, to bring actions on behalf of a plan to recover for violations of the obligations defined in § 409(a)." It reviewed those obligations, underscoring that the fiduciary duties under section 409 "relate to the plan's financial integrity and reflect a special congressional concern about plan asset management." LaRue, it then stated, had alleged misconduct that fell "squarely within th[ose] categor[ies.]"

*Spano*, 633 F.3d at 579-80 (internal citations omitted). Whereas, "[m]isconduct by the administrators of a defined benefit plan will not affect an individual's entitlement to a defined benefit unless it creates or enhances the risk of default by the entire plan,"

> [f]or defined contribution plans . . . fiduciary misconduct need not threaten the solvency of the entire plan to reduce benefits below the amount that participants would otherwise receive. Whether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to persons tied to particular individual accounts, it creates the kind of harms that concerned the draftsmen of § 409.

*LaRue*, 128 S.Ct. at 1025.

Applying *LaRue*, the Seventh Circuit already had held "that § 502(a)(2), and thus § 409(a), may be used by the beneficiary of a defined-contribution account that suffers a

9

loss, even though other participants are uninjured by the acts said to constitute a breach of fiduciary duty." **Rogers v. Baxter International Inc.**, 521 F.3d 702, 705 (7th Cir. 2008). In none of those cases, however, had the question arisen as to how actions for breach of fiduciary duty implicating a defined-contribution plan should proceed when class-wide relief was sought. As the **Spano** court noted,

> While **LaRue** leaves no doubt that plan beneficiaries are entitled to resort to section 502(a)(2) after a breach of fiduciary duty reduces the value of plan assets in their defined-contribution accounts, that tells us very little about whether or under what circumstances employees resorting to section 502(a)(2) may properly proceed as a class under Federal Rule of Civil Procedure 23. To determine whether class treatment is appropriate, we must distinguish between an injury to one person's retirement account that affects only that person, and an injury to one account that qualifies as a plan injury. The latter kind of injury potentially would be appropriate for class treatment, while the former would not.

**Spano**, 633 F.3d at 581.

The court identified at least three instances in the latter category, in which losses occurring in one account possibly could diminish plan assets as a whole: (1) when, by imprudent management, a fiduciary causes a particular account to have less valuable than it would have been under prudent management; (2) when the plan administrator charges excessive fees; and (3) when the plan has been reckless in the investment options offered, "offering nothing but junk-rated bonds or highly leveraged packages." *Id.* at 581-82. Yet the court did not take a categorical approach, noting that whether any of these circumstances in fact did diminish plan – as opposed merely to individual – assets, and therefore was appropriate for class treatment, would turn on the particular circumstances of each case. *Id.* at 582.

With that groundwork in place, the court proceeded to consider whether the class certified in *Spano* met the requirements of Rule 23. While noting that "[t]he assertion that Boeing imposes excessive fees on all participants, as well as the assertion that Boeing has failed to satisfy its fiduciary duties in its selection of investment options, both describe problems that would operate across the plan rather than at the individual level," and thus satisfy the numerosity and commonality requirements, the court found the class definition adopted by the district court – described as "breathtaking in its scope" – presented problems in terms of typicality and adequacy. *Id.* at 586 ("Anyone, in the history of Time, who was ever a participant in the Boeing Plan, or who in the future may become a participant in the Boeing Plan, is swept into this class."). Because typicality demands "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group," the court held " that a class representative in a defined-contribution case would at a minimum need to have invested in the same funds as the class members." *Id.* "[T]hus we think that there must be a congruence between the investments held by the named plaintiff and those held by members of the class he or she wishes to represent." *Id.*

As the court then observed, this same requirement of identity of interest also has implications for the requirement of Rule 23(a)(4) that a proposed class representative adequately protect the interests of the class as a whole. Because "[t]here is a constitutional dimension to this part of the inquiry," "absentee members of a class will not be bound by the final result if they were represented by someone who had a conflict

11

of interest with them or who was otherwise inadequate." *Id.* at 586-87. Ensuring that at least one class representative is invested in each of the allegedly imprudent options met this requirement with more precision than the *Spano* plaintiff's proposed global class definition.

The *Spano* decision played out in a subsequent case, *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803 (7th Cir.), *cert. denied*, 134 S.Ct. 826 (2013). Mindful of the court's ruling in *Spano* that "'a class representative in a defined-contribution case would at a minimum need to have invested in the same funds as the class members,'" the *Abbott* plaintiffs "proposed separate classes for each of their remaining claims, with class membership in each one limited to those Plan participants who invested in the relevant funds during the class period." *Abbott*, 725 F.3d at 807 (quoting *Spano*, 613 F.3d at 586). In addition, the plaintiffs proposed provisionally[5] measuring the relative success *vel non* of the challenged investments by reference to an index tracking the

---

[5] The court later fleshed out the provisional nature of the reference to this index:

> [T]he Hueler Index is intended only as a provisional estimate of damages, useful only as a mechanism to ensure that the class meets the requirements of Rule 23; by the time all is said and done, the damages measure will likely become more refined, and it is possible that [the class representative] will be entitled to damages under whatever measure is used. . . . The fact that a plaintiff may have difficulty proving damages does not mean that he cannot have been harmed. [The class representative]'s lack of damages as measured by the Hueler Index suggests that he may have a problem proving the degree of his injury, but Lockheed overreads both Article III's injury-in-fact requirement and the facts in this case when it interprets the absence of damages under the Hueler Index as dispositive proof that [the class representative] was not injured. (It is possible, for instance, that if the Plan had been managed prudently, it might have outperformed the Hueler Index at all times, and thus [the class representative] would have done even better. All of that remains to be shown.)

*Abbott*, 725 F.3d at 808. Plaintiffs in this case have offered no similar objection to the benchmark indices advocated by defendants in their proposed definitions of the imprudent investment subclasses.

12

performance of a variety of similar funds over time. *Id.* "By limiting the SVF class to only those Plan participants who suffered harm under this measure, Plaintiffs further reasoned that they had avoided including anyone in the class who may have benefited [sic] from Lockheed's conduct." *Id.* Nevertheless, the district court denied class certification.

On interlocutory appeal, the court determined that the lower court had abused its discretion in denying certification and that the proposed class was indeed properly defined. While cognizant of *Spano*'s "warnings that plaintiffs and courts must take care to avoid certifying classes in which a significant portion of the class may have interests adverse to that of the class representative," the *Abbott* court nevertheless noted it had "never held, and *Spano* did not imply, that the mere possibility that a trivial level of intra-class conflict may materialize as the litigation progresses forecloses class certification entirely." *Id.* at 813. Moreover, the court found that "the specifics of the [imprudent investment] claim make it unlikely that the sorts of conflicts that concerned us in *Spano* will arise," because "a Section 502(a)(2) action seeks only to make the fiduciary refund to the Plan any losses caused by the breach." *Id.* at 814. Because the plaintiffs took "care to limit the class to those Plan participants who invested in the SVF during the class period" and relied on reference to an index of similar funds as "one reasonable way to exclude from the class any persons who did not experience injury," the court found "[t]hese details make all the difference." *Id.*

I am persuaded by the logic of these decisions that plaintiffs' proposed class definition is insufficiently precise insofar as the imprudent investment claims are

13

concerned. It is not enough for plaintiffs to counter, as they do here, that a more broadly defined class is appropriate because the injury is to the Plan itself and damages will be paid to the Plan. "It is not enough to say that the named plaintiffs want relief for the plan as a whole, if the class is defined so broadly that some members will actually be harmed by that relief." *Spano*, 633 F.3d at 587. Although the nature of the requested relief is collective, that relief is measured by the extent of the injury of the individual putative class members who suffered damages as a result of their investment in a particular fund. Plaintiffs who suffered no such injury are neither sufficiently typical nor adequate to represent the class.

I thus will approve subclasses of the imprudent investment class defined, for now, *see* FED. R. CIV. P. 23(c)(1)(C), as follows:

> **Imprudent Investment Class A (Artisan Fund)**: All Plan participants and beneficiaries, excluding defendants, who invested in the Artisan Fund between January 1, 2009, and June 22, 2015, and whose investment in the Fund underperformed relative to the Russell 2000 Index.
>
> **Imprudent Investment Class B (TCM Fund)**: All Plan participants and beneficiaries, excluding defendants, who invested in the TCM Fund between January 1, 2009, and April 8, 2013, and whose investment in the Fund underperformed the Russell 2500 Growth Index.

For similar reasons, because no named class representative invested in the PIMCO Fund, I will not certify an imprudent investment class related to that fund at this time. Regardless of the merits of their typicality arguments in this regard, plaintiffs nowhere address whether their proposed class representatives meet the adequacy requirements of Rule 23(a)(4) with respect to this fund. The adequacy of representation requirement

must be "stringently applied," **Albertson's, Inc. v. Amalgamated Sugar Co.**, 503 F.2d 459, 463–64 (10th Cir. 1974); **Clark v. State Farm Mutual Automobile Insurance Co.**, 245 F.R.D. 478, 485 (D. Colo. 2007), **aff'd**, 590 F.3d 1134 (10th Cir. 2009), because the preclusive effect of any judgment implicates the due process rights of absent members, **Pelt v. Utah**, 539 F.3d 1271, 1284-85 (10th Cir. 2008). Where no named class representative is or was invested in the PIMCO Fund, I cannot be adequately assured that the interests of the absent PIMCO investors will be sufficiently protected.

Having thus found appropriate certification of a excessive fees class and two imprudent investment subclasses, I turn to the requirements of Rule 23(b). Plaintiffs here claim class certification is appropriate under either subpart of Rule 23(b)(1), which permits certification if "prosecuting separate actions by or against individual class members would create a risk of" either:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

**FED. R. CIV. P**. 23(b)(1).

Defendants do not even address this aspect of plaintiffs' request for class certification, and I find the proposed class satisfies at least the requirements of Rule 23(b)(1)(A). "Rule 23(b)(1)(A)"takes in cases where the party is obliged by law to treat the members of the class alike[.]" **Amchem Products, Inc. v. Windsor**, 521 U.S. 591,

614, 117 S. Ct. 2231, 2245, 138 L. Ed. 2d 689 (1997) (citation and internal quotation marks omitted). Just so here, where the fiduciary duties implicated are owed to all members of the various classes. Numerous other courts in this circuit likewise have found certification of ERISA class breach of fiduciary actions appropriate under this rule. *See, e.g., Teets v. Great-West Life & Annuity Insurance Co.*, 315 F.R.D. 362, 373-74 (D. Colo. 2016), *appeal filed* (10th Cir. Jan. 26, 2018) (No. 18-1035); *In re Williams Companies ERISA Litigation*, 231 F.R.D. 416, 424-25 (N.D. Okla. 2005); *Baker v. Comprehensive Employee Solutions*, 227 F.R.D. 354, 360 (D. Utah 2005).

Next, as required by Rule 23(g), the court must appoint class counsel when a class is certified. **FED. R. CIV. P.** 23(c)(1)(B). Factors relevant to the appointment of class counsel are the work counsel has done in identifying or investigating potential claims in the action; counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; counsel's knowledge of the applicable law; and the resources counsel will commit to representing the class. **FED. R. CIV. P.** 23(g)(1)(A)(i)-(iv). Ultimately, the court must conclude that class counsel will fairly and adequately represent the interests of the class. **FED. R. CIV. P.** 23(g)(4).

Plaintiffs have presented substantial, credible evidence demonstrating the experience and competence of their counsel, and defendants have offered nothing to suggest otherwise. Plaintiffs' counsel have pursued class action ERISA litigation on behalf of 401(k) participants based on claims similar to those raised here since 2006, and have been appointed class counsel in 17 such cases during that time (*see* **Plf. Motion** App., Exh. 9 ¶¶ 4-6 at 2-3), leading to what one district court characterized as a

"well-earned reputation as a pioneer and the leader in the field of retirement plan litigation." ***Abbott v. Lockheed Martin Corp.***, 2015 WL 4398475 at *1 (S.D. Ill. July 17, 2015). Based on counsel's extensive experience in the relevant area of law, and their conduct thus far in this case, the court finds and concludes plaintiffs' counsel is amply qualified to act as counsel for the class and thus satisfies the requirements of Fed. R. Civ. P. 23(g).

Finally, under Rule 23(c)(2)(A), the court "may direct appropriate notice to the class." "Thus, Rule 23 did not require that any notice be given" for class actions certified under Rule 23(b)(1), ***Skinner v. Uphoff***, 175 Fed. Appx. 255, 258 (10th Cir. April 11, 2006), at least not at this point in the proceedings, *see* FED. R. CIV. P. 23(e)(1). The court should exercise its discretion to require notice under this rule with care. *See* FED. R. CIV. P. 23, Adv. Comm. Note (2003 amendments); ***Skinner***, 175 Fed. Appx. at 258. Because the parties have not addressed the propriety of notice in their submissions, I will not direct notice at this time. Should the parties feel notice is required or advisable, they of course may submit appropriate motions presenting evidence and arguments to guide the exercise of my discretion in that regard.

**THEREFORE, IT IS ORDERED** as follows:

1. That **Plaintiffs' Motion for Class Certification** [#104], filed June 30, 2017, is granted in part;

2. That the following plaintiff classes are certified and defined as follows:

> (1) **Excessive Fee Class**: All participants and beneficiaries of the Oracle Corporation 401(k) Savings and Investment Plan from January 1, 2009, through the date of judgment, excluding defendants.

(2) **Imprudent Investment Class A (Artisan Fund)**: All Plan participants and beneficiaries, excluding defendants, who invested in the Artisan Fund between January 1, 2009, and June 22, 2015, and whose investment in the Fund underperformed relative to the Russell 2000 Index.

(3) **Imprudent Investment Class B (TCM Fund)**: All Plan participants and beneficiaries, excluding defendants, who invested in the TCM Fund between January 1, 2009, and April 8, 2013, and whose investment in the Fund underperformed the Russell 2500 Growth Index; and

3. That Schlicter Bogard and Denton, LLP, is appointed as counsel for the plaintiff class.

Dated January 30, 2018, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge