**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No.  1:16-cv-00175-REB-CBS**

DEBORAH TROUDT, *et al.*,

        Plaintiffs,

v.

ORACLE CORPORATION, *et al.*,

        Defendants.

**REPLY IN SUPPORT OF MOTION TO EXCLUDE PROPOSED EXPERT
TESTIMONY OF MICHAEL GEIST [#126]**

Plaintiffs' Opposition [#133-1] reinforces what their proffered expert, Michael Geist, has readily admitted: his empirical recordkeeping-fee opinion is not based on *any* specific facts or data or derived from *any* methodology beyond reference to "experience" (which is no methodology at all).  This mandates exclusion under Tenth Circuit law.  Plaintiffs cannot avoid this result by backfilling Geist's opinion with irrelevant data, misrepresenting case law, and, as a last resort, asking the Court to delay considering this Motion until after summary judgment.  Equally meritless are Plaintiffs' suggestions that Geist is qualified to give legal opinions on "prudent" fiduciary conduct, or that his factual narrative only "identifies" facts, as opposed to spinning and drawing conclusions from them.  Geist's opinion should be excluded now under Federal Rule of Evidence 702.

## ARGUMENT

**I.    Experience Alone Does Not Satisfy Rule 702 for Geist's Empirical Opinion.**

At the threshold, Plaintiffs' Opposition all but concedes that Geist's core record-keeping-fee opinion is empirical, not qualitative, in nature.  *See Ho v. Michelin N. Am.,*

*Inc.*, 520 F. App'x 658, 664-65 (10th Cir. 2013) (describing the difference).  Plaintiffs acknowledge that Geist ultimately is trying to distill whatever (undisclosed) data points comprise his "experience" down to a precise, supposedly "reasonable" fee the Oracle Plan might have paid since 2009.  *See* [#133-1] at 5-6, 12-14.  This is not an unverifiable qualitative or "experience-based opinion[.]"  *Id.* at 10; *Ho*, 520 F. App'x at 664-65.  It is an inherently data-driven assertion about the market price for specific services at precise points in time.  The price of any good or service necessarily derives from what others in the same market agree to pay.  Indeed, by trying (unsuccessfully) to rehabilitate Geist's opinion with *data* about a handful of plans Geist admittedly did *not* consider, and seeking to use his opinion to convince the Court to award specific damages he claims the Plan suffered, Plaintiffs confirm the empirical nature of his opinion.  [#133-1] at 1, 12-13.

Accordingly, Plaintiffs have two separate reliability burdens under Rule 702: demonstrating Geist's empirical opinion is (i) based upon sufficient facts or data, and (ii) the product of the reliable application of reliable principles and methods.  Fed. R. Evid. 702(b)-(d).  Plaintiffs' Opposition confirms they cannot meet either, let alone both.

### A. Geist's Empirical Opinion Is Not Based On Any Facts or Data.

Nowhere does Plaintiffs' Opposition identify any facts or data upon which Geist relied in forming his list of "reasonable" recordkeeping fees.  This is unsurprising, as Geist already admitted he did not rely on any.  [#126] at 5, 8-10.  Instead, Plaintiffs deflect, arguing that even pointing out this failing goes to the "weight" Geist's opinion deserves, not its admissibility.  [#133-1] at 10-11.  This puts the cart before the horse by ignoring

2

Rule 702 entirely, and none of Plaintiffs' cases supports this position.[1]  Oracle is not quibbling that Geist included certain data points or excluded others; rather, his opinion is inadmissible *at the outset* because he relied on *no* facts or data.  [#126] at 7-10.

Tenth Circuit authority (which Plaintiffs ignore) confirms that Geist's "experience" alone cannot paper over this fundamental deficiency.  *Ho*, 520 F. App'x at 664-65 ("empirical" opinions cannot "simply reference[]" an expert's "experience in general").  Nor can the "supplemental materials" Plaintiffs' counsel produced on the eve of this Motion.  [#133-1] at 6, 14.  To start, these materials come from public information, which Plaintiffs are trying to use to legitimize—not *correct*—Geist's flawed opinion.  This is improper under Rule 26(e)(1)(A), meaning the Court should disregard it pursuant to Rule 37(c).[2]

Even if considered, these "supplemental materials" do not move the needle.  Geist admits he *did not rely* on any of this information in arriving at his opinion; he only dug it up to "refresh" his memory *in another case* when another court forced him to.  [#126] at 13.  Worse, while Plaintiffs claim this data offers "support for the reliability" of Geist's "reasonable fees," [#133-1] at 14, Geist testified that he views such Form 5500 data as a "*completely unreliable* way to determine" recordkeeping fees.  [#126] at 13.

---

[1] *See* [#133-1] at 10 (citing *Beltran v. InterExchange, Inc.*, 2018 WL 526907, at *3 (D. Colo. Jan. 24, 2018) (expert relied on "overwhelming" data, including survey responses "in the thousands" and "at least five other sources"); *Kaiser-Hill Co., L.L.C. v. MACTEC, Inc.*, 2006 WL 2348757, at *3 (D. Colo. Aug. 11, 2006) (characterizing dispute over "sufficient facts and data" as going to weight, but providing no information about the opinion or argument, which was an "egregious example of . . . idiosyncratic and unhelpful briefing").

[2] *See infra* at 8-9; *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1169 (D. Colo. 2006) (trying "to 'strengthen' or 'deepen' opinions expressed in the original expert report exceeds the bounds of permissible supplementation," and to hold otherwise "would be the antithesis of the full expert disclosure requirements stated in Rule 26(a)") (citations omitted); *Oklahoma v. Tyson Foods, Inc.*, 2009 WL 2252129, at *3 (N.D. Okla. July 24, 2009) (Rule 26(e) "does not cover failures of omission because the expert did an inadequate or incomplete preparation," and allowing supplementation "whenever a party wants to bolster or submit additional expert opinions would reek [*sic*] havoc in docket control and amount to unlimited expert opinion") (citations omitted).

### B. Geist's Experience Is Not a Methodology Under Rule 702.

Plaintiffs also concede Geist used no methodology to arrive at his "reasonable fees." The only explanation Plaintiffs muster is a generic statement that Geist "appl[ied] his experience to the specific facts of the case." [#133-1] at 10. But "experience is not a methodology," *Dean v. Thermwood Corp.*, 2012 WL 90442, at \*7 (N.D. Okla. Jan. 11, 2012), particularly for an empirical opinion like Geist's, which must be supported by something more than his generalized "experience," *Ho,* 520 F. App'x at 664-65.

Plaintiffs cite *Jorgensen v. Ritz-Carlton Hotel Co.*, 2017 WL 3390582, \*6 (D. Colo. Aug. 8, 2017), to argue that qualifications alone can carry the day. [#133-1] at 8. But that case concerned a *qualitative* opinion—about the cause of a drain clog—and thus falls on the other side of the Tenth Circuit's distinction from empirical opinions.[3]  *See Ho*, 520 F. App'x at 664-65. Unable to address this problem squarely, Plaintiffs again try to evade scrutiny by arguing that pointing to Geist's lack of methodology is, itself, an argument over the "weight" his opinion deserves. [#133-1] at 8. This is both circular and incorrect.[4]

Finally, close analysis of Plaintiffs' out-of-circuit cases belies their assertion that Geist's methodology-free approach "has been found sufficiently reliable in other ERISA"

---

[3] Tellingly, Plaintiffs deleted the critical part of their quote from *Jorgensen*, which applies to the type of empirical opinion Geist offers here: "However, in cases such as the present, **where an expert does not rely on testing or data, and instead supports his opinions** primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." 2017 WL 3390582, \*6 (emphasis added to the omissions from Plaintiffs' Opposition, *see* [#133-1] at 8).

[4] Contrasting Geist's approach with experts in Plaintiffs' own cases bears this out. For example, Plaintiffs cite *Casper Inn, LLC v. Superior Builders, Inc.,* 2017 WL 5172400 (D. Wyo. July 17, 2017) (Rankin, J.), but again exclude the relevant part of this ruling, noting only the generic observation that "concerns surrounding methodologies go to the weight and not admissibility." [#133-1] at 8. But the expert in that case *had a methodology* and "provide[d] a sufficient description" of it (to test slip resistance on exemplar tiles with a certain cleaning product). *Id.* at \*1-3. Geist, by contrast, offers no "underlying methodology" whatsoever.

4

cases, even if contrary to Tenth Circuit law. [#133-1] at 11-12. The opinion in *Tussey v. ABB, Inc.*, 746 F.3d 327, 337 (8th Cir. 2014), says only that the district court declined a challenge to an expert's methodology, but says nothing *about* that methodology, including whether it was a data-free, experience-only approach like Geist's. Meanwhile, unlike Geist, the expert in *Abbott v. Lockheed Martin Corp.*, offered a panoply of data points along with a detailed methodology for deriving his opinion from them.[5] As for the motion to exclude Geist's opinions in *Sacerdote v. New York University*, No. 16-cv-6284 (S.D.N.Y.), it was brought *after* summary judgment and just days before trial, a context that explains the court's desire for "cross-examination" of *all* experts.[6] *Id.* [##227, 270]. As explained below, this Court already determined that proper scrutiny of Geist's opinion *should not* wait until after summary judgment.

## II.     This Motion Is Not "Premature."

Since producing Geist's Report on December 15, 2017, Plaintiffs and Geist have done everything possible to insulate his opinion from scrutiny before summary judgment—and now they try and leverage those strategic efforts to suggest Oracle somehow jumped the gun in moving to exclude Geist:

- Despite the requirements of Rule 26(a)(2)(B)(ii), Geist provided no facts or data whatsoever underlying his opinions when issuing his report on Dec. 15, 2017.
- Geist refused to provide documents about his "experience" or facts and data

---

[5] *See Abbott*, No. 06-cv-701 (S.D. Ill.), [#148-8] at PDF p. 12-16 (explaining opinion was based on data collected from various plans and expert's independent request for information, and describing methodology for deriving recordkeeping fees from data); [#148-15] at PDF p. 4-5 (explaining reasoning for choosing six plans and in using Form 11-Ks in the analysis). As such, the Court's comment that defendant's challenge "goes to weight," not admissibility, plainly refers to a dispute over the facts and data upon which the expert indisputably relied, not to endorse reliance on "experience" *in lieu of* such facts and data. *Id.* [#225] at 4.

[6] The *Sacerdote* court did not explain its specific analysis as to the motion to exclude Geist, as it summarily denied *six* pending *Daubert* motions in a two-sentence ruling. *Id.* [#270].

5

relevant to his opinions in response to a January 31, 2018 subpoena, based on confidentiality objections and other grounds. [#126] at 5, n.4.

- Plaintiffs refused to allow Oracle to share Geist's Report with Mercer or Fidelity, which the Court overruled. [#122] (Trans. Feb. 9, 2018 conf.) at 7:5-13; 25:17-25.

- Plaintiffs refused to present Geist for a deposition before summary judgment, which the Court overruled. *Id.* at 9:7-9; 25:5-9.

- Oracle's counsel traveled to St. Louis for a full-day deposition on March 8, at which Geist refused to provide any meaningful testimony about his "experience," claiming he cannot remember or that it is confidential (or both). [#126] at 5-6.

- Finally, after being compelled by another court, after this Court's pre-summary judgment expert discovery deadline [#118], and just weeks before the April 16 dispositive motion deadline [*id.*], Plaintiffs tried to forestall this Motion by serving a "supplement" of irrelevant data, despite being told repeatedly, months earlier, that Oracle intended to move to exclude Geist's opinion. [#126] at 12-13.

The goal of these tactics is obvious: keep Geist's opinion alive until summary judgment, then leverage it to manufacture disputes of fact. So it comes as no surprise that Plaintiffs' primary argument here asks the Court to postpone its evaluation of Geist's opinion until after summary judgment. [#133-1] at 9-10.

The Court should not condone such gamesmanship, and there is no valid reason to postpone a ruling on this Motion. In fact, the Court has already embraced this point:

> [G]iven the circumstances here, and in particular, a Rule 1 consideration; . . . if Mr. Geist's report is successful in defeating any summary judgment motion . . . and that it's later determined that there were some issues with the methodology and the foundation and the opinions asserted in that report and . . . that those create issues later resolved after overexpenditure and costs to the parties, in some ways it would [be] my preference to resolve those issues now and that those cards ought to be laid out on the table now and that that evidence ought to be used for purposes of the summary judgment proceedings. [#122] at 26:13-25.[7]

---

[7] Even Plaintiffs' own cases support this Court's reasoning. *See, e.g., Ekotek Site PRP Comm. v. Self*, 1 F. Supp. 2d 1282, 1296 n.5 (D. Utah 1998) ("Had the issue been able to have been decided sufficiently far in advance of the trial to cause an appreciable savings of time or money if the evidence was excluded, an even harder look at admissibility might have been in order"). The other rulings Plaintiffs cite occurred within

6

Plaintiffs' arguments for overriding the Court's stated "preference" only underscore the shell-game they are trying to play with the Federal Rules, this Court's Scheduling Order, and Oracle's time, resources, and potential liability. It is Plaintiffs' burden, not Oracle's, to ensure Geist's testimony was admissible when they served his report. Fed. R. Civ. P. 26(a)(2); Fed. R. Evid. 702. They failed to do so. Instead, they left it to Oracle to seek more detail about Geist's *ipse dixit* opinion—and then resisted those efforts at every turn. *Supra* at 5-6. Only after being compelled by another court and being told the date Oracle would file this Motion did Geist suddenly revise his view of "confidentiality" and offer "supplemental disclosures" in a *post hoc* attempt to validate his numbers with public information he admittedly did not rely on and which he previously testified is "completely unreliable." *Supra* at 3.[8] These "disclosures" did not, as Plaintiffs say, "alleviate[]" the need for this Motion. [#133-1] at 13. Rather, they confirm that Plaintiffs' position as to whether and when they must establish that Geist's opinion is admissible is a moving target, which they now argue should be placed after summary judgment.

Nor are Plaintiffs correct in suggesting that Oracle was somehow unreasonable in declining their last-minute "offer" of a second Geist deposition. [#133-1] at 7, 13. This "offer" was an empty gesture with no impact on this Motion: unless Geist plans to contradict his sworn testimony, he already confirmed his opinion rests on "experience"

---

a month of trial. [#133-1] at 9 (citing *Young v. Brock*, 2014 WL 553413, at *1 (D. Colo. Feb. 12, 2014); *Perez ex rel. Cardenas v. Henneberry*, 2011 WL 1743734, at *1 (D. Colo. May 5, 2011)).

[8] Plaintiffs' suggestion that Geist "consulted with his personal attorney" only *after* his deposition is false. [#133-1] at 6. Geist's personal counsel served his responses and objections to Oracle's January 31, 2018 document subpoena, participated in an hour-long meet-and-confer with Oracle's counsel on February 26, and confirmed Geist's confidentiality position in a letter dated March 5. *See* [#130-6].

7

alone, not on specific facts or data or any methodology. Oracle should not have to give Plaintiffs a "do-over" because another court ordered Geist to produce more information.[9] Plaintiffs again conflate admissibility and the "weight" Geist's opinions deserve: while Oracle would need to re-depose Geist *after* summary judgment should the Court decline to exclude his opinion, the *admissibility* issue is ripe for resolution.

### III.   Plaintiffs' Attempts to Bolster Retroactively Geist's Empirical Opinion Through Briefing Confirm the Opinion's Deficiencies.

Aside from being procedurally improper, Plaintiffs' lawyers cannot reverse-engineer the reliability of Geist's opinion by citing extraneous fee data that, while never part of Geist's analysis, supposedly supports his conclusions. [#133-1] at 12-13.

In assessing the reliability of Geist's opinion, the "focus, of course, must be solely on the principles and methodology, not on the conclusions they generate." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993). Thus, Plaintiffs' burden is not to prove Geist's opinion is "correct," but to prove his methodology is "sound and that the opinion is based on facts which sufficiently satisfy Rule's 702's reliability requirements." *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999). In other words, Geist's data-free, methodology-free approach does not become reliable if the results resemble a few hand-picked numbers from a universe of documents. Make no mistake: here again, Plaintiffs are trying to create the illusion of a dispute over the "weight" of Geist's opinion by backfilling it with data *Oracle's expert* proffered—and on which Geist never relied.

---

[9] Plaintiffs' position here is the opposite of the one their same counsel took in *Sacerdote v. NYU*. When defendants there moved to compel Geist to answer deposition questions, Plaintiffs' counsel argued that Geist should not be compelled to do so, but rather that if defendants felt his opinion was deficient, "the proper remedy is a motion under [R]ule 702." No. 16-cv-6284 [#181] at 3 (S.D.N.Y., Mar. 6, 2018). That is what Oracle has done here.

8

Even if this approach were proper, Plaintiffs' *post hoc* attempts to validate Geist's opinion misrepresent the data. Take for instance Plaintiffs' assertion that a 2015 RFP shows that Geist's former employer, T. Rowe Price, and other vendors proposed fees "far below" the Plan's. [#133-1] at 13. In fact, this RFP involved bids for recordkeeping services between ███████ per participant, when Geist himself says the Oracle Plan was paying just ███. *Compare* [#130-10], *with* [#126-2] ¶ 174. Likewise, Plaintiffs pluck a small subset of data produced by Oracle's expert, Steven Gissiner, for a fraction of the years at issue to "illustrate" the Plan overpaid. [#133-1] at 12-13; [#130-7]. But the totality of Gissiner's data shows the opposite.[10] [#130-7]. Plaintiffs also claim the record "independently" validates Geist's opinion. [#133-1] at 12. But in support Plaintiffs cite only to *Geist's own* narrative as the "record," making this not "independent" but circular. *Id.* (citing only [#126-2] (Geist Rpt.) and [#126-3] (Geist dep.)).

Far from "amply support[ing]" Geist's conclusions, the data Plaintiffs cite only undermines Geist's "reasonable" fees opinion and confirms that his failure to base his opinion on any data or methodology renders it inadmissible under Rule 702.

## IV.   Geist's "Prudent" Practices Opinion and Factual Narrative Are Inadmissible.

Geist's opinion as to "prudent fiduciary practices" does not merely "refer[ence]" ERISA's statutory requirements. [#133-1] at 15. It explicitly attempts to *define* them and then assess whether Oracle met that definition. [#126] at 14. This part of Geist's opinion

---

[10] ██████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████ *Id.*

is therefore inadmissible. *Id.* Moreover, Plaintiffs' claim that Geist has "direct" fiduciary experience rests solely on his vendor-based experience selling *to* fiduciaries. [#133-1] at 14. He has *no* experience as a fiduciary, or even advising one. [#126] at 6, 14.

Plaintiffs also concede Geist's extended factual narrative consists of the "conclusions he draws," not just "certain facts" upon which he relied. [#133-1] at 15. This critical difference makes his narrative inadmissible under Tenth Circuit law. [#126] at 14-15. And this is particularly true given the chasm between Geist's "conclusions" and the evidence here. *Id.* at 15 n.9. Indeed, Plaintiffs' reliance on Geist to supply the "record" in this case, [#133-1] at 2-3, 12, confirms that this portion of his report is merely their preferred narrative "dressed up and sanctified as the opinion of an expert." *Dean*, 2012 WL 90442, at *9 (citation omitted). It should be excluded.

## CONCLUSION

For the above reasons, and those stated in Oracle's opening brief, the Court should exclude Geist's proposed expert testimony.

Dated:  April 27, 2018

Richard B. Benenson
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202
P:  (303) 223-1100; F:  (303) 223-1111
rbenenson@bhfs.com

*Attorneys for Defendants*

Respectfully submitted,

by: *s/ Christopher J. Boran*
Christopher J. Boran
MORGAN, LEWIS & BOCKIUS LLP
77 W. Wacker Dr., Fifth Floor
Chicago, IL 60601
P: (312) 324-1000; F: (312) 324-1001
christopher.boran@morganlewis.com

Brian T. Ortelere
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
P:  (215) 963-5150; F: (215) 963-5000
brian.ortelere@morganlewis.com

10

**CERTIFICATION OF SERVICE**

I hereby certify that on the 27th day of April, 2018, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties and counsel of record.

    /s/ Christopher J. Boran