IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-00175-REB-CBS

DEBORAH TROUDT, *et al.*,

      Plaintiffs,

v.

ORACLE CORPORATION, *et al.*,

      Defendants.

---

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

---

Plaintiffs brought this action alleging that Oracle Corporation, the Oracle Corporation 401(k) Committee and other individually named defendants breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 (ERISA) by causing the Oracle Corporation 401(k) Savings and Investment Plan (Plan) to pay unreasonable recordkeeping and administrative expenses, and retain imprudent investment options. Only after approximately four years of litigation, and on the eve of trial, were the parties able to reach a settlement to resolve this action. The settlement provides significant benefits to thousands of current and former participants in the Plan. In light of the litigation risks further prosecution of this action would inevitably entail, the parties request that the Court: (1) preliminarily approve the proposed settlement; (2) approve the proposed form and method of notice to the class; and (3) schedule a hearing at which the Court will consider final approval of the settlement.

1

## BACKGROUND

### I. Pre-filing investigation.

Starting in the first half of 2015, Class Counsel began their extensive investigation of potential claims and legal theories in this action. Relying on their experience as the preeminent firm in ERISA 401(k) litigation, they investigated and analyzed the Plan's recordkeeping and administrative fees and the investment performance and fees of the investment options offered to Plan participants. Through the course of their investigation, they reviewed and analyzed the Plan's Form 5500s, filings with the Securities and Exchange Commission, and other Plan-related documents obtained from the named plaintiffs. In addition, Class Counsel, on behalf of one of the named plaintiffs, requested documents from the Plan administrator in accordance with 29 U.S.C. §1024 related to the operation and administration of the Plan. In response, the Plan administrator produced the Plan document, trust agreement and amendments, and summary plan descriptions, among other documents. Class Counsel reviewed and analyzed this production, which assisted them during their investigation and their subsequent preparation of the complaint.

### II. Claims and procedural history.

On January 22, 2016, Plaintiffs filed this action. [#1]. They alleged that Defendants breached their fiduciary duties and committed prohibited transactions by causing the Plan to pay unreasonable recordkeeping and administrative fees to the Plan's recordkeeper, and breached their duties by selecting and/or retaining three imprudent investment options in the Plan: the Artisan Small Cap Value Fund (Artisan Fund), the

TCM Small-Mid Cap Growth Fund (TCM Fund), and the PIMCO Inflation Response Multi-Asset Fund (PIMCO Fund). *Id.* ¶¶81–91, 99–103. Plaintiffs also alleged that Oracle Corporation failed to monitor the performance of the other plan fiduciaries. *Id.* ¶¶92–98.

Plaintiffs later amended their complaint to add as defendants the individual Committee members. [#84].

After the filing of the complaint, Defendants filed a motion to dismiss [#36]. While the motion to dismiss was pending, the parties engaged in initial document and electronically stored information (ESI) discovery. [#70] at 9–10. During this process, they negotiated a protective order governing the treatment of confidential information [#54], and a stipulation governing the production of hard copy documents and ESI [#50]. They also negotiated the scope of Defendants' document production in response to Plaintiffs' document requests, which included search terms and key custodians.

On March 22, 2017, the Court denied Defendants' motion to dismiss after substantial briefing in opposition to Defendants' motion. [#67]. Plaintiffs then engaged in further merits discovery by obtaining additional responsive documents from Defendants, as well as those from two third parties (Fidelity and Mercer Investments). [#108] ¶¶3–4, 10. They deposed nine current or former Oracle employees (10 depositions total), the Plan's former outside counsel, and two third party service providers. [#112] ¶¶6–12. Many of these depositions lasted the full seven hours permitted by the Federal Rules. Following the close of fact discovery, the parties then engaged in expert discovery. Each party disclosed two expert witnesses, who prepared lengthy expert reports. One of

3

Plaintiffs' experts was deposed prior to summary judgment briefing, [#121], while two others were deposed following the Court's summary judgment order.

On June 30, 2017, Plaintiffs moved for and briefed class certification. [#104]. On January 30, 2018, the Court granted Plaintiffs' motion in part certifying the following classes:

> (1) **Excessive Fee Class**: All participants and beneficiaries of the Oracle Corporation 401(k) Savings and Investment Plan from January 1, 2009, through the date of judgment, excluding defendants.
>
> (2) **Imprudent Investment Class A (Artisan Fund)**: All Plan participants and beneficiaries, excluding defendants, who invested in the Artisan Fund between January 1, 2009, and June 22, 2015, and whose investment in the Fund underperformed relative to the Russell 2000 Index.
>
> (3) **Imprudent Investment Class B (TCM Fund)**: All Plan participants and beneficiaries, excluding defendants, who invested in the TCM Fund between January 1, 2009, and April 8, 2013, and whose investment in the Fund underperformed the Russell 2500 Growth Index.

[#119] at 17–18. The Court appointed the named plaintiffs as Class Representatives and Schlichter, Bogard & Denton LLP as Class Counsel. *Id.* at 7, 18.

On April 16, 2018, Defendants filed their motion for summary judgment. [#134]. Summary judgment was fully briefed on June 12, 2018. [#164]. The summary judgment record was extensive. It consisted of well over 3,500 pages of declarations, exhibits, deposition testimony, and expert reports. On March 1, 2019, the Court granted in part and denied in part Defendants' motion. [#179]. The Court dismissed Counts I and IV pertaining to Plaintiffs' claims of unreasonable recordkeeping and administrative expenses, and Counts II and III insofar as they are based on the PIMCO Fund and the decision to include the TCM Fund in the Plan. *Id.* at 29–30. Because Counts I and IV

4

were dismissed, the Court vacated the Excessive Fee Class. *Id.* at 31. The Court also modified the start of the class period for the Imprudent Investment Classes from January 1, 2009 to January 22, 2010. *Id.*

Following the deposition of Plaintiffs' expert witness in June 2019, Defendants sought leave to file a second motion for summary judgment and filed a motion to exclude Plaintiffs' expert witness who would appear at trial. [#185], [#190]. Both motions were denied. [#192], [#198].

The trial was scheduled for 10 days to commence on December 2, 2019. [#181]. (The start of trial was later continued to December 3, 2019. [#210].) The parties completed all pre-trial filings, including the Proposed Final Pretrial Order [#199], lengthy Proposed Findings of Fact and Conclusions of Law [#204], [#207], deposition designations and objections [#197], [#203], Trial Briefs [#205], [#208], and a joint exhibit list consisting of 290 exhibits. The Final Trial Preparation Conference was held on November 13, 2019. [#201].

In anticipation of the commencement of trial, the parties began settlement negotiations. For well over one month, the parties discussed the possibility of settlement through numerous telephone calls and written correspondence. Only on December 3, 2019, the morning of the first day of trial, were the parties able to reach an agreement in principle on both monetary and non-monetary relief. [#211]. However, over the next two-plus months, the parties continued discussions without final agreement on the scope of the non-monetary relief. Ultimately, on February 26, 2020, the parties reached an agreement on all terms.

### III. The terms of the settlement.

The terms of the settlement are set forth in the settlement agreement dated February 26, 2020 attached hereto as Exhibit A to the Declaration of Jerome J. Schlichter.

#### A. Monetary relief.

Defendants, or an entity acting on their behalf, will deposit $12,000,000 in an interest-bearing settlement account (the Gross Settlement Fund). The Gross Settlement Fund will be used to pay amounts to class members, as well as Class Counsel's attorneys' fees and costs, administrative expenses of the settlement, and Class representatives' compensation if awarded by the Court.

The administrative expenses refer to those incurred in the administration of the settlement. They include those paid to the settlement administrator to provide notice to class members and distribute the settlement proceeds to class members, as well as those paid to the independent fiduciary charged with determining whether to approve and authorize the settlement. Class Counsel requested multiple proposals from candidates to provide these services. The parties selected Analytics Consulting LLC to serve as settlement administrator, and Gallagher Fiduciary Advisors, LLC to serve as the independent fiduciary.

#### B. Non-monetary relief.

In addition to the monetary component of the settlement, for a period of three years, Defendants agree to instruct the Plan's recordkeeper in writing that in performing previously agreed upon recordkeeping services with respect to the Plan, it must not

solicit current Plan participants for the purpose of cross-selling proprietary non-Plan products and services, including, but not limited to, Individual Retirement Accounts (IRAs), non-Plan managed account services, life or disability insurance, investment products, and wealth management services, unless in response to a request or expressed need by the Plan participant.  In the event Defendants enter into a new recordkeeping agreement with the existing recordkeeper or a new recordkeeper during the three year settlement period, Defendants agree that any resulting contract shall include a provision similarly restricting the recordkeeper from soliciting current Plan participants for the purpose of cross-selling proprietary non-Plan products and services. This non-monetary provision provides substantial value to current and future participants by ensuring that the Plan's recordkeeper does not improperly benefit from the sale of retail financial products and services to the detriment of Plan participants.

**ARGUMENT**

The law favors and encourages settlements, especially in complex actions. *See Amoco Prod. Co. v. Fed. Power Comm'n*, 465 F.2d 1350, 1354 (10th Cir. 1972); *Big O Tires, Inc. v. Bigfoot 4x4, Inc.*, 167 F.Supp.2d 1216, 1229 (D. Colo. 2001). At the preliminary approval stage, a court "makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Rhodes v. Olson Assocs., P.C.*, 308 F.R.D. 664, 666 (D. Colo. 2015). The purpose at this stage is for the Court "to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of the settlement's fairness." *Rhodes*, 308 F.R.D. at 666 (*quoting* Newberg on Class Actions, § 13:13 (5th ed.)); *Walter v. Level 3 Commc'ns,*

7

*Inc.*, No. 09-658-REB, 2011 WL 13220491, at *1 (D. Colo. Dec. 14, 2011).

## I.   The settlement is fair, reasonable and adequate.

In order to determine whether a proposed settlement is fair, reasonable, and adequate, courts consider the following factors:

> (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). The settlement satisfies each factor.

### A.   The settlement was the product of a fair and honest negotiation.

When a "settlement resulted from arm's length negotiations between experienced counsel after significant discovery had occurred, the Court may presume the settlement to be fair, adequate, and reasonable." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). As the procedural history of this case demonstrates, the parties vigorously represented their respective clients. They completed extensive fact and expert discovery, and engaged in substantial motion practice at all stages. There was no collusion. *See Aragon v. Clear Water Prods. LLC,* No. 15-2821-PAB, 2018 WL 6620724, at *3 (D. Colo. Dec. 18, 2018) ("no evidence of collusion" where case had been "pending for nearly three years, during which time the parties have briefed several motions and engaged in formal discovery, including written discovery and depositions"). Further, the settlement was negotiated by experienced ERISA counsel. Given the circumstances, the Court should grant considerable deference to counsels' judgment as

8

to the "merits, fairness, and reasonableness of the settlement." *Rhodes*, 208 F.R.D. at 667; *Marcus v. Kan. Dep't of Revenue*, 209 F.Supp.2d 1179, 1183 (D. Kan. 2002) ("Counsels' judgment as to the fairness of the agreement is entitled to considerable weight").

### B. Serious questions of law and fact placed the outcome of litigation in doubt.

As to the merits of Plaintiffs' claims, serious questions of fact and law exist that could significantly impact this case if it were litigated through judgment. The parties' respective Findings of Fact and Conclusions of Law illustrate these questions. *Compare* [#204] *with* [#207]. Defendants strongly contested Plaintiffs' claims that Defendants acted imprudently when they retained the Artisan and TCM Funds, or otherwise had a flawed fiduciary decision-making process. They vigorously challenged the testimony of Plaintiffs' expert witness who opined that a prudent fiduciary would have removed the Artisan and TCM Funds in favor of Vanguard index fund alternatives. *See, e.g.,* [#207] at 77–84, 103–07, 111–17, 120–25. Defendants also relied on several affirmative defenses, including the safe harbor under ERISA §404(c) and asserted Plaintiffs' claims were time-barred. *Id.* at 84–88, 132–136. Given the "real prospect that plaintiffs would not have obtained any recovery had the case proceeded to trial", *Aragon*, 2018 WL 6620724, at *3, this factor weighs in favor of approving the settlement.

### C. The value of the immediate recovery outweighs the mere possibility of future relief after years of protracted and expensive litigation.

This action has been pending since January 2016. There was no guarantee of recovery for the class members. "By contrast, the proposed settlement agreement

9

provides the class with substantial, guaranteed relief." *Lucas*, 234 F.R.D. at 694. Class members will be "better off receiving compensation now as opposed to being compensated, if at all, several years down the line". *McNeely v. Nat'l Mobile Health Care, LLC*, No. 07-933, 2008 WL 4816510, at *13 (W.D. Okla. Oct. 27, 2008). They also will be able to invest their proceeds immediately in a tax-deferred vehicle, which adds even more value. *Kruger v. Novant Health, Inc.*, No. 14-208, 2016 WL 6769066, at *5 (M.D. N.C. Sep. 29, 2016). The Investment Company Institute estimates that the benefit of the present value of tax deferral for 20 years is an additional 18.6%.[1]

Even if Plaintiffs prevailed at trial, further delay in recovery and additional expenses would be incurred through years of appeal. This has been the experience of Class Counsel. For instance, in *Tussey v. ABB Inc.*, Class Counsel tried the first full trial of any 401(k) excessive fee case in January 2010, which resulted in a favorable judgment in March 2012. No. 06-4305, 2012 WL 1113291 (W.D. Mo. Mar. 31, 2012). At the time of the judgment, the case had been pending for over five years. After two separate appeals to the Eighth Circuit Court of Appeals and multiple remands to the district court, *after more than twelve years of litigation*, the parties finally reached a settlement on March 28, 2019. *Tussey*, [#859].

### D.   The parties believe the settlement is fair and reasonable.

It is Class Counsel's opinion that the settlement is fair and reasonable. Schlichter Decl. ¶2. "Counsels' judgment as to the fairness of the agreement is entitled to

---

[1] Peter Brady, *Marginal Tax Rates and the Benefits of Tax Deferral,* Investment Company Institute, Sept. 17, 2013, available at http://www.ici.org/viewpoints/view_13_marginal_tax_and_deferral.

10

considerable weight." *Aragon*, 2018 WL 6620724, at *3 (citation omitted). Here, Class Counsel is highly experienced in ERISA class action litigation involving 401(k) plans. In fact, they "pioneer[ed]" this area of litigation. *Abbott v. Lockheed Martin Corp.*, No. 06-701, 2015 WL 4398475, at *1 (S.D. Ill. July 17, 2015). They are regarded as "experts in ERISA litigation". *Tussey v. ABB, Inc.*, No. 06-4305, 2012 WL 5386033, at *3 (W.D. Mo. Nov. 2, 2012), *vacated on other grounds*, 746 F.3d 327 (8th Cir. 2014); *Bell v. Pension Comm. of ATH Holding Co.*, LLC, No. 15-2062, 2019 WL 4193376, at *2 (S.D. Ind. Sept. 4, 2019) ("Class Counsel are 'experts in ERISA litigation' with extraordinary skill and determination required to litigate these complex cases") (citation omitted).

Recently, Schlichter, Bogard & Denton was regarded as "Class Counsel of the highest caliber." *Kelly v. Johns Hopkins Univ.*, No. 16-2835, 2020 WL 434473, at *4 (D. Md. Jan. 28, 2020). Their work stands as an example of a firm "acting as a private attorney general, risking breathtaking amounts of time and money" in securing historic results for employees and retirees. *Nolte v. Cigna Corp.*, No. 07-2046, 2013 WL 12242015, at *3 (C.D. Ill. Oct. 15, 2013). This Court also specifically recognized Class Counsel's "extensive experience in the relevant area of law" based on their work on behalf of 401(k) participants, and found that counsel was "amply qualified to act as counsel for the class". [#119] at 17.

## II. Preliminary statement as to Class Counsel's forthcoming request for attorneys' fees, reimbursement of costs, and case contribution awards to the named plaintiffs.

Class Counsel will request attorneys' fees in an amount not to exceed one-third of the gross settlement amount, or $4,000,000, as well as reimbursement for costs

incurred of no more than $475,000. (For preliminary approval, the Court need not determine the reasonableness of any forthcoming attorneys' fee request at this time.) Under the common fund doctrine, Class Counsel is entitled to a reasonable fee award from the common fund obtained for the benefit of the class. Fed. R. Civ. P. 23(h); *Boeing Co. v. VanGemert*, 444 U.S. 472, 478 (1980). Under Tenth Circuit law, the preference in these cases is to award attorneys' fees based on the percentage of the common fund created. *Gottlieb v. Bany*, 43 F.3d 474, 482 (10th Cir.1994).

A one-third fee is consistent with the market rate in settlements for this complex area of law, particularly in ERISA class actions handled by Class Counsel. *E.g., Tussey v. ABB, Inc.*, No. 06-4305, 2019 WL 3859763, at *4 (W.D. Mo. Aug. 16, 2019); *Kelly,* 2020 WL 434473, at *4; *Waldbuesser v. Northrop Grumman Corp.*, No. 06-6213, 2017 WL 9614818, at *6 (C.D. Cal. Oct. 24, 2017); *Bell,* 2019 WL 4193376, at *3 (collecting cases); *Cassell v. Vanderbilt Univ.*, No. 16-2086, [#174] (M.D. Tenn. Oct. 22, 2019); *Clark v. Duke Univ.*, No. 16-1044, 2019 WL 2579201, at *3 (M.D.N.C. June 24, 2019); *Sims v. BB&T Corp.*, No. 15-1705, 2019 WL 1993519, at *2 (M.D. N.C. May 6, 2019); *Ramsey v. Philips N.A.*, No. 18-1099, [#27] (S.D. Ill. Oct. 15, 2018); *Gordan v. Mass. Mut. Life Ins. Co.*, No. 13-30184, 2016 WL 11272044, at *1–3 (D. Mass. Nov. 3, 2016); *Krueger v. Ameriprise Fin., Inc.*, No. 11-2781, 2015 WL 4246879, at *2 (D. Minn. July 13, 2015); *Kruger,* 2016 WL 6769066, at *2; *Nolte,* 2013 WL 12242015, at *2; *Abbott,* 2015 WL 4398475, at *2; *Beesley v. Int'l Paper Co.*, No. 06-703, 2014 WL 375432, at *2

(S.D. Ill. Jan. 31, 2014).[2]

Class Counsel also intends to request no more than $25,000 for each named plaintiff as a case contribution award to compensate them for their ongoing participation in this case and the risk they assumed in bringing this action. Although the Court need not address the reasonableness of this forthcoming request at this time, this amount is consistent with awards in similar 401(k) class action settlements. *See, e.g., Beesley*, 2014 WL 375432, at *4 (awarding $25,000 each to six surviving named plaintiffs); *Krueger,* 2015 WL 4246879, at *3  (awarding $25,000 each to five named plaintiffs); *Abbott,* 2015 WL 4398475, at *4 (awarding $25,000 each to six named plaintiffs involved throughout suit); *Tussey,* 2019 WL 3859763, at *4 (awarding $25,000 to three named plaintiffs); *Nolte,* 2013 WL 12242015, at *3 (awarding $25,000 to each of the five named plaintiffs).

### III. The Court should approve the proposed notice plan.

Due process and Fed. R. Civ. P. 23(e) require that notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950). "Individual notice must be provided to those class members who are identifiable through

---

[2] A one-third fee also is consistent with attorney fee awards in the Tenth Circuit. *Shaulis v. Falcon Subsidiary LLC*, No. 18-293-CMA, 2018 WL 4620388, at *2 (D. Colo. Sept. 26, 2018) (one-third fee); *Thompson v. Qwest Corp.*, No. 17-1745-WJM, 2018 WL 2183988, at *3 (D. Colo. May 11, 2018) (same); *Davis v. Crilly*, 292 F.Supp.3d 1167, 1174 (D. Colo. 2018) (37% fee of common fund); *Whittington v. Taco Bell of Am., Inc.*, No. 10-1884-KMT, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) (39% fee of common fund).

reasonable effort." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175 (1974). Only the "best notice that is practicable under the circumstances" is required. Fed. R. Civ. P. 23(c)(2)(B). Notice may be sent by "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B).

The proposed form and method of notice satisfy all due process considerations and meet the requirements of Rule 23(e)(1) because they are reasonably calculated to effect actual notice on class members. (The proposed notices are attached as Exhibits 3 and 4 to the settlement agreement (Exhibit A).) The notice will fully apprise class members of the existence of the lawsuit, the proposed settlement, and the information they need to make informed decisions about their rights, including: (i) the terms and operation of the settlement; (ii) the nature and extent of the release; (iii) the maximum attorneys' fees and costs that will be sought; (iv) the procedure and timing for objecting to the settlement and the right of parties to seek limited discovery from objectors; (v) the date and place of the fairness hearing; and (vi) the website on which the full settlement documents and any modifications thereto will be posted.

The notice plan consists of multiple components designed to reach class members. First, the notice will be sent by electronic email to all class members who have a current email address known by Oracle Corporation and/or the Plan's recordkeeper and by first-class mail to the current or last known address of all class members for whom there is no current email address shortly after entry of the order preliminarily approving the settlement. In addition to the notice, Plaintiffs' counsel will develop a dedicated website solely for the settlement, and a link to that website will appear on Plaintiffs' counsel's

website [www.uselaws.com]. The notice plan also includes a follow-up requirement for the settlement administrator to take additional action to reach those class members whose notice letters are returned as undeliverable. Thus, the form of notice and proposed procedures for notice satisfy the requirements of due process and the Court should approve the notice plan as adequate.

## CONCLUSION

The Court should grant preliminary approval of the class action settlement.

Dated: February 26, 2020

by: /s/ Jerome J. Schlichter
Jerome J. Schlichter
Michael A. Wolff
Kurt C. Struckhoff
SCHLICHTER BOGARD AND DENTON, LLP
100 South 4th Street, Suite 1200
St. Louis, MO 63102
Phone: (314) 621-6115
Fax:     (314) 621-5934
jschlichter@uselaws.com
mwolff@uselaws.com
kstruckhoff@uselaws.com

*Attorneys for Plaintiffs*

Respectfully Submitted,

by: /s/Christopher J. Boran
Christopher J. Boran
Matthew A. Russell
MORGAN, LEWIS & BOCKIUS LLP
77 W. Wacker Dr., Fifth Floor
Chicago, IL 60601
Phone: (312) 324-1000
Fax:     (312) 324-1001
christopher.boran@morganlewis.com
matthew.russell@morganlewis.com

Brian T. Ortelere
Jeremy P. Blumenfeld
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Phone: (215) 963-5150
Fax:     (215) 963-5000
jeremy.blumenfeld@morganlewis.com
brian.ortelere@morganlewis.com

William C. Berger
Sarah M. Stettner
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202
Phone: (303) 223-1100
Fax: (303) 223-1111
bberger@bhfs.com
sstettner@bhfs.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2020, a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will provide notice of the filing to all counsel of record.

/s/ Jerome J. Schlichter

17